IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY CO. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 21-3940 |
| | : | |
| PNC BANK, NATIONAL ASSOCIATION, et al. | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                   October 4, 2022

    Presently before the Court are Motions for Summary Judgment filed by Defendants PNC Bank, National Association ("PNC") and Mercantile Group, Ltd. d/b/a Integrated Mortgage Solutions ("IMS"). (Docs. 25, 26.) Plaintiff State Farm Fire & Casualty Co. ("State Farm") filed a Response in Opposition to Defendants' Motions (Doc. 27), to which Defendant PNC filed a reply. (Doc. 28.) For the reasons set forth below, summary judgment is denied.

**I.    INTRODUCTION**

    This is a property subrogation matter arising out of a fire that occurred on February 8, 2021, at a twin residential property in Freeland, Pennsylvania. The fire, which originated at 148 Washington Street, caused damage to the adjoining property at 150 Washington Street. Plaintiff State Farm provided insurance coverage to John Drauschak ("Drauschak"), the owner of 150 Washington Street. PNC was the mortgagee of the 148 Washington Street property and had contracted with IMS to undertake certain maintenance and security measures at the property. State Farm now seeks reimbursement of the funds it paid Drauschak under his policy following the fire. State Farm filed suit against Defendant PNC, asserting that it was the responsible party due to its failure to secure the property following the foreclosure. PNC then filed a third-party claim against

1

IMS asserting that its negligence led to the property damage at the 150 Washington Street property. Defendants PNC and IMS now seek summary judgment against State Farm.

## II. BACKGROUND

State Farm provided a homeowner's insurance policy to Drauschak insuring the property located at 150 Washington Street. (Doc. 25-1, PNC Ex. A.) On February 8, 2021, a fire broke out in the attic of the adjoining property at 148 Washington Street, which caused damage to Drauschak's property. (*Id*.) State Farm satisfied its obligations under the terms of its policy by providing coverage to Drauschak and paying for the damage to his home. (*Id*.) At the time of the fire, the mortgagors of 148 Washington Street were deceased, and the mortgage was in default. (*Id*., PNC Exs. B, C, E.) PNC, as mortgagee, obtained a foreclosure judgment on the property in November 2019 but did not proceed with a foreclosure sale. (*Id*., PNC Ex. C.) State Farm now seeks reimbursement of the funds it paid to Drauschak from PNC and IMS, claiming that they were negligent in maintaining and securing the 148 Washington Street property. (*Id*.)

Central to this case is the question of who bears responsibility for the 148 Washington Street property and whether the actions they took were sufficient.[1] PNC contracted with IMS to perform "certain real estate property inspection and real estate property preservation services." (*Id*., PNC Ex. B.) Pursuant to a Master Services Agreement entered into by the Defendants, IMS was responsible for securing the property at 148 Washington Street on PNC's behalf. (*Id*., PNC Ex. D.) The "Statement of Work," made pursuant to the Master Services Agreement between PNC

---

[1] In its motion for summary judgment, PNC appears to concede that it owed a duty to secure the property. PNC stated it was a "mortgagee out of possession with no obligations other than to keep the property secured." (Doc. 25 at 11.) To the extent this duty to secure the property is conceded, it does not affect the outcome of this motion because the question of whether PNC fulfilled its obligation remains. The conflicting facts set out within this memorandum opinion raise a question for the jury as to whether or not PNC had, in fact, secured the home in accordance with its admitted responsibility.

and IMS, delegated from PNC to IMS such tasks as performing reoccurring inspections, winterization, and lawn maintenance; changing locks; and providing reports about the property's condition to PNC, among several other responsibilities. *(Id.*, PNC Ex. B.) PNC classifies IMS as the property manager for the 148 Washington property and alleges, as such, "the property damage at 150 Washington [was] caused by the negligence and carelessness" of IMS. (Doc. 6 at 4, 17.)

The record reveals conflicting information about the condition of the property in the 15 months between PNC's foreclosure in November 2019 and the fire in February 2021. On November 19, 2019, IMS characterized the property as "vacant." (Doc. 25-1, PNC Ex. E.) Deposition testimony from Drauschak, however, informs us that he called the police at some point in mid-to-late 2019 after hearing noises in the basement of the property at 148 Washington Street, where unknown individuals were trying to steal copper pipes. (Doc. 27-2, Pl. Ex. B.) When the police arrived, the back door was open. (*Id.*) Several weeks later, on January 1, 2020, IMS claims to have secured the front and rear door of the property "using a deadbolt, lockbox, hasp, and padlock." (Doc. 25-1, PNC Ex. F.) IMS also asserts that it "winterized" the property on that date, confirming that water, heat, and electricity were turned off. (Doc. 25-1, PNC Ex. H.) IMS returned to the property on June 9, 2020, where an inspection report reveals that an exterior door was found ajar, the house number had been stolen from the front exterior of the property, personal items were strewn about the house, and human feces were found near the fireplace. (Doc. 27-1, Pl. Ex. A.) On November 5, 2020, IMS changed and installed locks on a second rear door of the property and also installed a two knob-lock and deadbolts on the basement backdoor. (Doc. 25-1, PNC Ex. G.) Another inspection report prepared by IMS on December 10, 2020, revealed that there were "visible damages" to the property, more human feces near the fireplace, and "unsafe hoarding issues." (Doc. 27-4, Pl. Ex. D.) Finally, Drauschak also recounts that the son of the deceased

mortgagors, and at least one other individual, may have been squatting in the property "until late 2020" and that the son had tried to get his mail directed to the 148 Washington address. (Doc. 27-3, Pl. Ex. C.)

On February 8, 2021, two months after IMS's last inspection report, a fire broke out at 148 Washington property, causing damage to 150 Washington Street. The fire investigation conducted by the Pennsylvania State Police Fire Marshal concluded that the fire originated in the attic of the 148 Washington property, but the fire "was ruled to be **UNDETERMINED** in nature." (Doc. 25-1, PNC Ex. K (emphasis in original).) On August 2, 2021, Plaintiff filed this suit against PNC, alleging that 148 Washington Street was in PNC's "care, custody, and control" and that PNC's failure to properly secure and maintain the property had caused the damage to 150 Washington Street. (Doc. 1.) PNC timely removed the case to this federal court. (*Id*.) On September 29, 2021, PNC filed a joinder complaint against IMS, pursuant to an agreement entered into between the parties, which required IMS to secure and maintain the property on PNC's behalf. (Doc. 6, Ex. B) Both PNC and IMS filed motions for summary judgment on July 7, 2022, and July 8, 2022, seeking dismissal of State Farm's claims.[2] (Docs. 25, 26.)

**III.   LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In evaluating a summary judgment motion, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotations and alterations omitted). "A genuine issue is present when a

---

[2] Defendants' motions present virtually identical legal arguments. Therefore, in the interest of judicial economy, we will consider Defendants' arguments as being collectively submitted.

reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of [its] burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citations omitted). However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). "The non-moving party has the burden of producing evidence to establish prima facie each element of its claim." *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 319 (1986)). In turn, "the moving party need only show that the non-moving party 'has failed to produce evidence sufficient to establish the existence of an element essential to its case' in order to obtain summary judgment." *A. Natterman & Cie GmbH v. Bayer Corp.*, 428 F. Supp. 2d 253, 257 (E.D. Pa. 2006) (quoting *Alvord–Polk, Inc. v. Schumacher & Co.*, 37 F.3d 996, 1000 (3d Cir. 1994)).

## IV.   DISCUSSION

In their motions for summary judgment, PNC and IMS assert that they neither owned nor possessed the property, and therefore had no duty to maintain it. (Doc. 25 at 16; Doc. 26 at 15.) In its response, State Farm disagrees and argues that PNC and IMS *had* a duty to properly protect the property and failed to do so, creating a fire hazard to neighboring properties, including 150 Washington Street. (Doc. 27 at 3-4.) Furthermore, Defendants claim that "there is no evidence as to who, if anyone for that matter, actually started the fire" nor is there any evidence that the property was not "properly secured." (Doc. 25 at 12.) Accordingly, PNC and IMS contend that "a jury would have to speculate as to whether [they were] negligent in failing to have the property secured, had a duty to secure the property, and whether the fire resulted from an unsecured entrance to the property." (Doc. 26 at 11.)

Summary judgment, as Defendants correctly note, should be entered in favor of the moving party where the non-moving party offers only "speculation or conjecture" in support of its claims. (*Id*. (citing *Galullo v. Fed. Express Corp*., 937 F. Supp. 392, 397 (E.D. Pa. 1996).) Here, however, we find that State Farm has presented sufficient evidence to withstand summary judgment on the issue of Defendants' negligence, as a reasonable jury could conclude that Defendants owed a duty to maintain the property at 148 Washington Street, Defendants breached their duty, and that Defendants' conduct was a substantial factor in bringing about the damage to the 150 Washington Street property.

At the center of the parties' dispute is the applicability of Pennsylvania Supreme Court precedent *Ford v. Jeffries*, 379 A.2d 111, 113 (Pa. 1977).[3] In *Ford*, the defendant owned a rental property on the lot adjoining the plaintiff's home. *Id*. at 112. The rental property had been vacant for years and was in a dilapidated condition. *Id*. Neighbors complained of broken windows, holes in the rental property's siding and foundation, torn lattice work, and the presence of pests. *Id*. at 113. After being in a "state of disrepair for some months," a fire broke out at the defendant's rental property, which then spread to the plaintiff's home, resulting in its "almost total destruction." *Id*. Although the source of the fire was unknown, the Pennsylvania Supreme Court concluded that the defendant was nevertheless responsible for the damage to the property, explaining that "a property owner can reasonably be expected to know that the visible conditions of vacant property in a state of disrepair may attract, for various purposes, children or adults, who, having entered the property, might act, either negligently or intentionally, in a manner that would cause a fire." *Id*. Therefore, the court held that, "[w]hen one negligently maintains property so as to create a fire hazard to an

---

[3] The parties agree that Pennsylvania law governs State Farm's claims. Therefore, we apply Pennsylvania law in our analysis of the parties' arguments in light of the factual record.

adjoining property and fire harm results, we refuse to conclude, as a matter of law, that the negligent conduct in maintaining the fire hazard was an insignificant cause. *This issue is therefore one for the jury to consider*." *Id*. at 114 (emphasis added).

Unlike the defendant in *Ford*, PNC and IMS did not own the property at 148 Washington Street, and for that reason they argue that this precedent is inapplicable to the present case. Specifically, PNC claims that it was "neither the possessor of land nor property owner of 148 Washington Street" and therefore "its obligation was limited to securing the premises and performing periodic inspections." (Doc. 28 at 2.) As to IMS, it claims that it was merely contracted by PNC "to maintain the property at PNC's direction" and that it otherwise had "no obligation to keep the property secure." [4] (Doc. 26 at 8, 15.) We are not persuaded that these distinctions make a difference. As Plaintiff points out, nothing in the text of *Ford* explicitly establishes property ownership as a prerequisite for liability in these circumstances. (Doc. 27 at 4.) Rather, the court relied on the general principle that, "[a] *possessor of land* is subject to liability to others outside of

---

[4] Notably, IMS asserts that the security measures and maintenance work it carried out at 148 Washington Street was undertaken "at the sole direction of Defendant PNC." (Doc. 26 at 2.) It claims that "Plaintiff's burden in this case is to present sufficient evidence that [IMS] breached a duty in failing to properly secure the residence at 148 Washington Street," and that, "IMS had no duty to 'secure' the property any more than it had, without specific direction from Defendant PNC." (*Id*. at 5.) We acknowledge that IMS's duty to secure and maintain the premises does not necessarily arise out of IMS's "possession" of the property. Rather, IMS's duty to Plaintiff appears to originate in its contractual obligations to PNC. *See Reeser v. NGK N. Am., Inc*., 14 A.3d 896, 898 (Pa. Super. 2011) ("[A] party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby […] [i]t is not the contract *per se* which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract.") (quoting *Farabaugh v. Pennsylvania Turnpike Commission*, 911 A.2d 1264, 1283 (Pa. 2006)). The question of what PNC directed IMS to do, and what IMS actually did in response to PNC's direction, however, is a question for the jury. For now, we consider IMS to be PNC's contractual agent, and therefore the actions of IMS can arguably be attributed to PNC.

7

the land for physical harm caused by the disrepair of a structure if the exercise of reasonable care would have made it reasonably safe by repair or otherwise." *Ford*, 379 A.2d at 113 (quoting Restatement of Torts (Second) § 365 (1965)) (internal alterations omitted). We accept this proposition and conclude that where a property was negligently maintained in such a manner that caused harm to a neighboring property, the court intended to broadly impose liability on "possessors" as well as "owners." Thus, we must examine whether PNC was a "possessor" of the property at 148 Washington Street before we can determine whether the principles set out in *Ford* are applicable here.

We acknowledge that, in some jurisdictions, "[a] mortgage creates only a security interest in real estate and confers no right to possession of that real estate on the mortgagee." Restatement of Property (Third) (Mortgages) § 4.1 (1997). Thus, the mere fact that PNC was a mortgagee of the property at 148 Washington Street does not necessarily amount to a possessory interest that would render PNC responsible for the property's maintenance, security, and repair. In Pennsylvania, a "possessor" of property is generally defined as a party who is "in occupation of the land with the intent to control it," or "in occupation of the land with intent to control it if no other party has done so subsequently," or if neither of those alternatives apply, "if it is entitled to immediate occupation." *Stanton v. Lackawanna Energy, Ltd.*, 886 A.2d 667, 677 (Pa. 2005) (quoting Restatement of Torts (Second) § 328E (1965)). "Control," in this context, means the exercise of "physical control" over the property with the intent to exclude others from its occupation. Restatement of Property (First) § 7 (1936). With these definitions in mind, we are persuaded that, despite PNC's status as a mortgagee, these questions of control are for a jury to decide based upon its factual findings.

Specifically, as we recounted within, when PNC obtained a judgment of foreclosure in November 2019, the mortgagors were deceased, and the property was determined to be vacant. Although it had been in foreclosure for 15 months before the fire of February 2021, PNC had not proceeded with a foreclosure sale. Further it had IMS secure the property in that interim period. IMS winterized the property, conducted periodic inspections, installed locks in January 2020, and changed the locks again in November 2020. In our view, this evidence could be construed to demonstrate that PNC exercised "physical control" over the property with an intent to exclude others from its occupation, including the deceased mortgagors' son who intermittently resided at the home in the months following foreclosure. *See, e.g., Apex Mortg. Corp. v. Great N. Ins. Co.*, 972 F.3d 892, 897 (7th Cir. 2020) (applying Pennsylvania law) (explaining that boarded windows and locks were not "dispositive" of the mortgagee's "possession" where the defaulted mortgagors continued to access the property). Thus, the evidence before us demonstrates that there exists a triable issue of fact as to whether PNC truly "possessed" the property at 148 Washington Street at the time of the fire. To this end, we cite Pennsylvania precedent for the proposition that, "[t]he question of whether a party is a 'possessor' of land is a determination to be made by the trier of fact." *Blackman v. Fed. Realty Inv. Tr.*, 664 A.2d 139, 142 (Pa. Super. 1995).[5]

---

[5] We accept that there is evidence in the record that in the 15 months following PNC's foreclosure, the home had been entered by unknown individuals who kept personal items in the property, who may have squatted in the property for extended periods of time, defecated on the floor of the property, and stole fixtures from the property. Although Defendants claim that "the property had been properly secured," they also stated in their briefing that "whoever started the fire gained access through an unsecured door," and specifically contend that the deceased mortgagors' son, who was not the owner nor a legal resident of the property, was "living in the property at the time." (Doc. 25 at 12, 14.) These statements raise a question of fact for a jury as to whether the property was secure and properly maintained, which would be necessary to determine whether PNC breached its duty of care.

Defendants raise a question as to whether it makes a difference who started the fire. We do not think that should be a consideration here. The Pennsylvania State Police Fire Marshal was unable to identify the cause, or any perpetrator, of the fire. (Doc. 25-1, PNC Ex. K.) The Pennsylvania Supreme Court instructed in *Ford*, however, that conclusive evidence as to the physical force that started the fire is not determinative to the question of the possessor's liability:

> The condition of [the landowner's] property was such that third persons might avail themselves of the opportunity to commit a tort or a crime. Whether or not [the landowner] should have realized that such a situation had been created is a question for the jury to decide.

379 A.2d at 114-15. *See also Allstate Vehicle & Prop. Ins. Co. v. Phila. Hous. Auth.*, 414 F. Supp. 3d 732, 734 (E.D. Pa. 2019) (holding that, "whether the acts of a third party were so extraordinary to render them a superseding cause is a factual question for a jury to decide[,]" where "the Fire Marshal was unable to determine the cause of the fire" that had damaged a neighboring property).

We find that the facts in the record raise a genuine dispute for the jury on the issue of breach and causation. *Ford*, 379 A.2d at 113 ("A jury question was thus presented as to whether [the landowner] negligently maintained his property […] The jury should have been permitted to consider the condition of the property, and whether its state of disrepair created an unreasonable risk of harm by fire to [the neighboring] property."). Therefore, we are satisfied that the question of whether Defendants owed a duty to Plaintiff, and if so, whether that duty was breached, as well as the question of whether Defendants' conduct was a "substantial cause" of the damage to the property at 150 Washington Street, are inquiries that cannot be resolved as a matter of law at this stage. *Ford*, 379 A.2d at 114. Accordingly, the denial of summary judgment is proper.

V.   **CONCLUSION**

For the foregoing reasons, summary judgment is denied. An appropriate Order follows.